UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

UNITED STATES OF AMERICA                                                        PLAINTIFF

v.                                                              CRIMINAL ACTION NO. 3:09CR-27-S

LESEAN THOMPSON                                                                 DEFENDANT

## MEMORANDUM OPINION AND ORDER

This matter is before the court for consideration of the objections of the United States to the findings of fact, conclusions of law, and recommendation of the United States magistrate judge that evidence seized and statements made by the defendant, Lesean Thompson, at the time of his arrest be suppressed.

The magistrate judge held an evidentiary hearing on December 8, 2009. The parties filed post-hearing briefs. The magistrate judge issued findings of fact and conclusions of law, and recommended that the motion to suppress be granted. The magistrate judge found that "the government failed to meet its burden of proving that the warrantless seizure of Mr. Thompson was lawful." Magistrate's Report, at p. 10. On June 18, 2010, the United States moved for reconsideration of the magistrate judge's findings and requested that the evidentiary hearing be re-opened so that the United States could put on additional proof. The United States' motion was denied. The United States has now filed its objections to the magistrate judge's report. (DN 51).

The outcome of this matter turns on the magistrate judge's finding that the United States had failed to establish by a preponderance of the evidence that a reasonable, articulable suspicion existed to investigatively detain Thompson. The parties agree that in the absence of reasonable suspicion,

the stop of Thompson was unconstitutional, as this was clearly not a consensual encounter. *United States v. Avery*, 137 F.3d 434 (6th Cir. 2997).[1] The United States called one witness, the arresting officer, Louisville Metro Police Department officer Jason Vance. The magistrate judge found that the defendant's proof offered through two witnesses, a friend who was arriving on the scene and a second arrestee, was diametrically opposed to the testimony offered by Officer Vance. The magistrate judge concluded that

> Given the government's burden, and that neither defense witness had any clearly established motive to misrepresent the facts, and one (Roger Wheeler) risked much that he apparently has worked to avoid if he were not truthful, the magistrate judge concludes that the court should evaluate the case as if Mr. Thompson did not run from the police, but was merely walking toward the house when he was seized, and then questioned and arrested. Certainly there is testimony to support the government's view, but it is not enough to carry the day, weighing all the proof and the demeanor and credibility of all the witnesses.

Magistrate's Report, p. 7.

Upon *de novo* review,[2] the United States would have the court weigh the evidence differently. The United States urges that Officer Vance's testimony was "consistent, well articulated and credible," while both of Thompson's witnesses had "credibility issues." US Objections, p. 8. We will address, in turn, the evidence offered, and the weight to be given to it.

---

[1] The only additional evidence offered in this instance which might have contributed to a reasonable suspicion of criminal activity was the testimony of Officer Vance that he observed Thompson instinctively pat his coat pocket as he was running away, an indication to the officer of the possible presence of a concealed weapon. The magistrate judge found, however, and this court agrees, that "the putative jacket pat is inextricably bound to the alleged flight." Magistrate's Report, p. 10, fn. 6. The officer testified concerning a jacket pat during flight. These purported actions are merely aspects of one occurrence, the believability of which is the essential matter in dispute.

[2] Within fourteen days after being served with a copy [of the magistrate judge's proposed findings and recommendations], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions. 28 U.S.C. § 636(b)(1)(C). The United States has not claimed error in the magistrate judge's decision to deny it leave to reopen the evidentiary hearing.

The confrontation in question occurred in front of the residence of Kevin Bland's grandmother at 1005 S. 32nd Street in Louisville on November 30, 2008. The area of 32nd Street between Greenwood and Garland was known to police for violence and drug activity.

On November 27, 2008, brothers Michael and Kevin Bland were victims of a drive-by shooting. Michael Bland was killed and Kevin Bland was injured in the incident. On November 30th, a wake had been held for Michael Bland, and various friends and family had gathered afterward at 1005 S. 32nd Street where Kevin Bland was recuperating from his injuries. Louisville Metro Police were, of course, aware of the shooting and were concerned about the possibility of additional violence related to the shootings. The officers were instructed to "step-up patrols" in the area of the Bland home.

Shortly before 10:00 p.m. on November 30th, Vance testified that he was approached by two of his sergeants who stated that they had driven past the grandmother's residence approximately fifteen minutes earlier and had seen two unidentified men flee at the sight of the police car. The officers determined that they should further investigate. In an attempt to interview the men, six officers, including Officer Vance, converged on 1005 S. 32nd Street from different directions. Officer Vance testified that he pulled up to the curb at the home and saw Wheeler, a man he recognized, begin to run away. He claims that he shouted "Roger, don't do it!" and then began to chase Thompson, the closest man to him. He stated that Thompson placed his hand on one of his jacket pockets which Vance believed was a reflex to prevent a weapon from falling out of his pocket. He stated that he caught Thompson on the Bland's front porch and immediately handcuffed him and walked him back to the patrol car. Officer Vance testified on direct examination that Thompson spontaneously told him that he had a gun. However, on cross-examination he admitted

that he had asked Thompson whether he "had anything on him," to which Thompson responded that he had a gun in his pocket. Thompson, a convicted felon, was then arrested for possession of the firearm.

Roneeka Standard, 23 years old and a long-time neighborhood resident, testified for the defense. She stated that she had known Thompson for many years but they were not close friends, nor was she a current or former girlfriend. She testified that she had gone to the wake for Michael Bland on November 30th and had then come to the gathering at 1005 S. 32nd Street. She testified that she arrived by car at approximately the same time as the police officers. When she exited the vehicle, she saw Thompson walking to the front porch of the residence. She testified both on direct and cross-examination that Thompson was walking, not running or jogging. She testified that the two men were "run up on" by the police. She testified that she did not talk to police that night. She testified that she stood there on the corner during Thompson and Wheeler's encounter with police.

Roger Wheeler, 22 years old, also lived in the neighborhood and knew Thompson. Thompson was good friends with Wheeler's cousin, Andre O'Neal. He had known Thompson for a long time, but they did "hang out" often, as Thompson and O'Neal were older than Wheeler. Wheeler testified that he had come to the Bland house after the wake for Michael Bland to eat a meal and visit. He testified that he had been inside the residence before the police arrived, and had walked outside with Thompson to get a cup of vodka from a bottle in his cousin's vehicle. He stated that as he and Thompson were returning to the house, the officers pulled up and someone called his name. He testified that he turned around to see who was calling him as Thompson continued walking onto the porch. He stated that someone in the house shut the door in their faces as the police approached. He testified that the police grabbed both Thompson and himself while

Thompson was on the porch and he was near the steps. Wheeler stated that he was thrown down and "roughed up a bit" during which time his gun fell out of his pocket.

Wheeler was cross-examined concerning a recitation of facts contained in his state court plea agreement through which various charges against him were diverted. The facts recited were that Wheeler "tampered with physical evidence by pitching a gun under a parked car in order to conceal it from the police", and that Wheeler "resisted arrest." Wheeler testified that he signed the plea document. He further testified, "That's what it says, but that's all not accurately true. I only took the plea because my felony will be gone within the three years...I only took the plea agreement because I was ready to get it over with and my felony will be gone in three years." Transcript of Suppression Hearing, pp. 90-92. He verified that he did not author the statement of facts and that he was represented by counsel on the state charges. Wheeler stated that he was employed at UPS working third shift, and had been employed there for four years.

As found by the magistrate judge, the testimony of Vance and that of Standard and Wheeler stands diametrically opposed. The magistrate judge noted that "In candor, the magistrate judge is not convinced that any of the three witnesses presented a fully accurate, complete, and reliable account of what actually happened." Magistrate's Report, p. 6. This court finds that the only witness whose testimony stands wholly unchallenged is that of Standard. The court finds that the United States' general contention that "a witness with a personal relationship to an accused has an interest in the outcome of a case and thus holds potential bias in his or her testimony" (Objections, p. 8) has not been shown to have any application to Standard and her testimony. Standard testified that she knew Thompson since she was a child and had been around him quite often. The testimony, however, developed the fact that Thompson was significantly older than Standard, that she knew

Thompson's sister, and indicated a lack of any direct or close association with Thompson. Standard was a wholly credible witness, having not been shown to have any reason to provide untruthful testimony on behalf of Thompson. She was among many who attended the reception after Michael Bland's wake. She just happened upon the scene of the stop and arrest of Thompson and Wheeler.

Wheeler's testimony was clear and unequivocal concerning the manner in which the stop occurred. He, too, stated that he and Thompson were walking back to the house, and were grabbed by the officers. His testimony was consistent with Standard that they did not attempt to flee. The United States contends that his testimony is wholly unreliable because on cross-examination he elicited evidence that the factual statement in Wheeler's plea agreement differed from his testimony at the suppression hearing. He testified at the hearing that the gun fell out of his pocket, whereas the plea agreement states that he pitched the gun under a vehicle. He stated that he signed the plea agreement to eliminate a felony conviction and that the written statement was not wholly accurate. In any event, his testimony concerning the initiation of the stop was not contradicted by anything recited in the plea agreement and was consistent with Standard's contention that the two men were "run up on" by the police.

Vance's testimony was consistent, with the exception of a few details of which Vance was unsure. He could not remember what Thompson was wearing, although he remembered a jacket with some color, possibly a team jacket. He stated that he walked Thompson to his police cruiser after handcuffing him, but then stated that he did not know whose cruiser he approached. He also stated that Thompson spontaneously stated that he had a gun. On cross-examination, however, he acknowledged that, in fact, he asked Thompson if he "had anything on him." Vance was an experienced officer on the scene in an area with which he was familiar. His testimony was detailed,

but not always precise. Ordinarily slight misstatements are not of great significance, where an officer provides credible and clear evidence overall. Individuals, including officers, may make mistakes in recalling the details of events, and such misstatements do not necessarily indicate untruthfulness. In fact, attempts to correct misstatements may indicate an effort on the part of a witness to retell the tale as accurately as possible. Vance did not misstate any facts concerning the initiation of the stop. He testified consistently that Wheeler and Thompson ran from the officers.

We are faced here, however, with two completely divergent versions of the facts concerning the stop of Thompson.[3] We do not find any one witness' testimony to be more credible. The burden is on the United States to establish by a preponderance of the evidence that Officer Vance executed a constitutional search and seizure of Thompson; that is, one based upon a reasonably articulable suspicion of criminal activity which formed the basis for an investigative detention of Thompson. *United States v. Matlock*, 415 U.S. 164, 177, n. 14, 94 S.Ct. 988, 996, 39 L.Ed.2d 272 (1974), *citing, Lego v. Twomey,* 404 U.S. 477, 488-89 (1972). The United States had every opportunity to tip the balance of evidence in its favor by, at the very least, offering rebuttal testimony. Six officers were on the scene, yet the United States called only the arresting officer to meet its burden. While the United States may have felt confident in the sufficiency of the testimony of Officer Vance, the court finds itself, as did the magistrate judge with a clear "he said, she said" dispute of fact. Thus Officer Vance's testimony is simply not enough to meet the preponderance standard at the end of the day.

In conclusion, we agree with the magistrate judge's factual and legal analysis in its entirety. The United States has failed to meet its burden of establishing by a preponderance of the evidence

---

[3]Whether we disregard Wheeler's testimony as the United States suggests or decline to do so, two credible versions of the events remain.

that Officer Vance's stop of Thompson was based upon a reasonably articulable suspicion of criminal activity.  Therefore, the motion of the defendant to suppress evidence must be granted.

The court having considered the findings of fact, conclusions of law, and recommendation of the United States magistrate judge and having conducted a *de novo* review of those portions of the record and the magistrate judge's report to which there are objections, and the court being otherwise sufficiently advised, **IT IS HEREBY ORDERED AND ADJUDGED** that the Findings of Fact, Conclusions of Law, and Recommendation (DN 43) of the magistrate judge are **ACCEPTED AND ADOPTED IN THEIR ENTIRETY**, and the motion of the defendant, Lesean Thompson, to suppress physical and testimonial evidence obtained at the time he was seized and arrested on November 30, 2008 (DN 29) is **GRANTED**.

**IT IS SO ORDERED.**